IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

**FILED - GR**
September 10, 2021 12:46 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW   SCANNED BY: JW / 9-13

Leonardo Lleras Rodriguez

**Petitioner**

v.

Case No.___  1:21-cv-787
Ray Kent
U.S. Magistrate Judge

The Geo Group Inc.

George Zoley

Founder

Jose Gordo

CEO

Brian R. Evans

COO

Tracy Johns

Facility Administrator

K.Gray

Assistant Facility Administrator

R.Cross

Health Services Administrator

Nurse Staig

Nurse

**Respondents**

**COMPLAINT UNDER 42 U.S.C. 1983, AND 42 U.S.C 12131**

Comes now, Leonardo Lleras Rodriguez, Petitioner, pro-se, a federal inmate currently housed in North Lake Correctional Facility, operated by The Geo Group Inc. under contract by the United States Bureau of Prisons.

## INTRODUCTION

The Petitioner is a 59-year-old Cuban national and a federal inmate currently serving time at North Lake Correctional Facility for charges of voter's fraud and conspiracy to defraud the Internal Revenue Service, he got sentenced to 33 months for each charge running consecutively to a total of 66 months, and he is bringing forth a complaint under 42 U.S.C 1983, and 42 U.S.C 12131 against The Geo Group Inc., and his individual actors for a series of allegations of negligence, deliberate indifference, and intimidation that caused pain, suffering, mental anguish, and stress all caused by the implementation of policies by the Respondents, that caused the loss of limb.

## FACTS

The Petitioner arrived at the Respondent's Facility on March 3,2021 ever since the first day Petitioner has had a lot of trouble in getting various services from medical services like, distilled water for the use on his CPAP, eyeglasses replacement he has been given several excuses regarding the use of that water, replacement of his eyeglasses and finally it was denied. On or about May of 2021, an order was issued to all pod officers in the facility to only turn the power on to the CPAP users at 10:00 pm and turn it back off at 06:00 am in the next morning, the Petitioner did not agree with this rule since the reason that was established it was

1

because of an internal security issue steaming from the possession and usage of cellular phones by inmates. The Petitioner complained to the pod officer Callahan and the officer said that it was following orders, when the Petitioner asked by whom the officer responded Lt. Scott, then the Petitioner asked to speak to Lt. Scott and the Lt. show up with Sgt. Mitchell when the Petitioner asked them to remove the order, they informed him that they could not do it because the order came from H.S.A Cross, and he had to wait until 10:00 pm to go to sleep and use the CPAP equipment. The Petitioner suffers from "**Chronic Obstructive Sleep Apnea**", and takes medication for **Anxiety**, **PTSD**, with **Sleep disorder**, so 20 to 30 minutes of taking his medication for sleep he falls to sleep but he can't go to bed because he has to wait until 10:00 pm. The next morning the Petitioner went and talked to AFA Ball **Chief of operations**, regarding the removal of such order but her response was inconclusive, telling the Petitioner that it was no hope the rule will be changed, he also talked with Major Pantoja a couple days later at the sally port area in front of maintenance Supervisor Scott Bliss regarding the CPAP rule, and the Major response was that he would look into it, then the Petitioner sent a Cop-out to Assistant Facility Administrator K. Gray "See exhibits" in which he responded that there were not guidelines as to the use of the lights and the lights were to be turn on at 6:00 am until 10:00 pm, that the use of CPAP was a medical decision, and there was no need for CPAP usage from 06:00 am until 10:00pm.

On June 17,2021 the Petitioner was called into medical where he was supposed to get his toe nails trimmed, Petitioner suffers from toe nails enlargement due to fungus, when he got there he was encountered by Nurse Staig which informed him to remove his

**2**

shoes and to place his foot in a warm water dispenser, the Petitioner then asked her if she was going to do the trimming and she said no and laughed, she then proceeded and gave the Petitioner an instrument that looks like a pair of wire cutters but for medical use and told him to do it himself, now this has been the second time he was here for toe nail trimming with the same procedure. While the Petitioner was trimming his toe nail, it he nicked his skin and some blood came out, he cleaned up and finished doing the trimming, and informed Nurse Staig regarding the small injury, but nothing was said or done afterwards, and the Petitioner was sent back to his housing unit.

On Friday June 25, 2021 the officer in charge of control at the Delta Unit where Petitioner resides, turned the power off to the CPAP unit at 06:00 am without previous notice the Petitioner, that was using the CPAP at that time got startled because the mask went into a form of vacuum which awoke the Petitioner abruptly and reacted by hitting his right toe against a Television fixture in the bedding area, a fixture that should not be there since there are Television's in the dayroom area, and Federal Bureau of Prisons inmates are not allowed to have Television's in their cells. On June 28,2021 the institution went into lock down, then the Petitioner informed Nurse Hermes at pill line of the injured toe, she responded that she was going to let medical know about it, but that medical was very busy, apparently the complaint went unheard. On June 29,2021 the, Nurse Hermes came and apologized to the Petitioner for the delay, again the injured toe was shown to Nurse Hermes that was accompanied by Nurse Smith they both seen the injured toe that now it was red and very swollen and told them that he had chills the previous two nights, and that he thought that he was getting a cold, and he got

3

the same response, we will see what we can do, that same afternoon the Petitioner asked the officer on duty to let medical know that he needed to come down there, by now the injured toe looked really bad, at medical he was seen by Nurse Smith, NP Moody, NP Bonebreaker the Officer on duty and H.S.A Cross, there Nurse Smith exclaimed, that the injured toe didn't looked like that in the morning, now it was worse than when she seen it, there at medical the wound was looked at by NP Moody and NP Bonebreaker they then proceeded to inject the Petitioner with antibiotics and told him that he will also be getting antibiotics by mouth, and the Petitioner was sent back to his living quarters.

In the morning of June 30th, 2021 the Petitioner went back to medical and showed them where is injured toe had exploded and puss went all over the cell, the toe had a split on the skin of about three quarters of an inch, there he was given two additional shots the injured toe was cleaned and dressed and the Petitioner was sent back to his living quarters with additional dressing so he could do it himself.

On July 1, 2021 the Petitioner went back to medical where he showed them of a red striking from his toe to about his knee was told that he needed more antibiotics, and was sent back to his living quarters, that night during pill line the red striking had worsen now and was close to his groin, the Petitioner showed to Nurse Killian and she told him to go to medical at 08:00 am by now the toe looked very bad, red and purple and very swollen, also it had gotten worse to the point of swelling the whole foot and part of the leg. On July 2, 2021 the Petitioner show up at medical and he was told that he had to come back at 11:00 am, because that was the time for his call-out, he then

4

told them about what the nurse at pill line the night before had said and he was seen then, there he told Dr: Berndt that besides hitting his toe on the fixture that is on his bedding area he was at medical on June 17,2021 and while the Petitioner did the toe nail trimming he had nicked the skin on his toe nail, Dr. Berndt looked at the injured toe and immediately referred him to be taken to the emergency room at Munson Health Care Cadillac Hospital, there the Petitioner was placed on intensive intravenous antibiotics therapy until the 8th of July,2021, when the injured toe was removed, because the infection had progressed into the bone. On July 12,2021 the Petitioner was released back to the Facility, where Nurse Stakenas was waiting to redress his wound and look at the surgery results, at same time NP Bonebreaker came into the room and jokingly said to the Petitioner that she had told him that he was going to lose his toe, like it was nothing serious, then H.S.A Cross came into the room and the Petitioner confronted her and blame her for the loss of his toe due to the implementation of the CPAP on and off rule, and her response was that if the Petitioner wasn't imprisoned that would wouldn't had happen, insinuating that it was ok, that anything bad should happen to an inmate just because the inmate is incarcerated is alright, she then went on telling him that the Petitioner should set the alarm on his watch, because she gets up at 05:00 am every morning, this was in front of the nurses and the officer on duty, right after this confrontation the Petitioner asked to speak to the facility phycologist Mr. Morehead, and told him that he was very stressed and traumatized due to the loss of

5

his toe the rules implanted and medical deliberate indifference, if he would had been sent to the real emergency department at the hospital on time instead of not sending him to the hospital, because HSA Cross worries about what would cost more money to be sent to the hospital or to be treated inhouse, that caused the loss of his toe, he also told him in how H.S.A Cross had part of the blame in this situation for implementing this rule of cutting his CPAP power off at 06:00 am, the phycologist advised the petitioner to take stress exercises and told him to go back to his unit. On July 24,2021 as seeing how Medical Services was able to make decisions in the facility the Petitioner asked nurse Smith to relay a message to H.S.A. Cross regarding the removal of the T.V. stand where he injured his foot, no answer was given, the Petitioner then when to speak to A.F.A Ball regarding the same issue and was told that structural changes will not be made. On July 30,2021 the Petitioner was called to medical at 10:15 am where he was taken to a doctor's office and there Nurse Patrick and the Facility Administrator Tracy Johns were, when the Petitioner came in, the Facility Adm. asked him if he knew whom he was, the Petitioner answered no, the Facility Adm. went and introduced himself, and after the formalities were done, Mr. Johns asked him if he knew why he was brought there, and the Petitioner responded, because the CPAP issue, and Mr. Johns said no. the Petitioner said ,because of my toe, then Mr. Johns also responded no, then the Petitioner said well I ran out of guesses, then Mr. Johns said to the Petitioner well Sir you are here because we have to get on the same page, and Sir you are an asshole, and I don't like disrespectful persons and you sir is a disrespectful person because you

go around here calling the medical staff by their first name, and asking for the last name of a nurse at the hospital to send her flowers, the Petitioner looked around dumbfounded that this man in his position and statue had a meeting with him and Nurse Patrick regarding such insignificant issue, that should have been handled by someone else but him, this also affirm the rumors about the direct personal relationship between Mr. Johns and Mrs. Cross is happening, also is the Petitioner belief that Mr. Johns relationship with Mrs. Cross is interfering with his job to the point of taking such offensive and impulsive tone with the Petitioner, then Mr. Johns said not to look dumb because he had witnesses to the fact, and the Petitioner told Mr. Johns that he had called Mrs. Goodrich by her first name but that it was as a friendly not offensive gesture, then he called the Petitioner a liar and to think hard because if the Petitioner lie to him he was going to be sent to the RHU and that he wasn't going to come out of there until he was released because the Petitioner was a problem and he didn't want inmates that cause problems wasn't getting a transfer either, because Mr. Johns will not dump a problem on someone else hands, he then went on saying that the Petitioner was not an honest person because he was incarcerated, and if he wasn't honest then he was a liar, and he wasn't going to believe anything the Petitioner would say against any of the staff, then Mr. Johns said that he has been on this business for forty years and that he knew shysters, and that the Petitioner was one of them and has been one all of his life, so the Petitioner asked him what was it that Mr. Johns wanted him to do to get on the same page, being very obvious that he was being threatened, the Petitioner decided to

7

play along, then Mr. Johns said that I wasn't the only one with a CPAP machine and he didn't want to hear anyone complaining about the CPAP rule and that what I was telling staff around regarding in how I injured my toe against the fixture being a lie, and if he heard that I was asking for a name or such, then things were going to change for the Petitioner around there, insinuating something bad would happen to the Petitioner, then ***Mr. Johns affirmed his threat by saying this is not a threat it is a promise***, and the ***Petitioner should watch what his next step was going to be, to think really good about it.*** The Petitioner took this as a direct intimidating practice to discourage the Petitioner from filing a lawsuit, and it was then that the Petitioner decided not to continue the grievance procedure in that facility, because he feared that Mr. Johns threatening will be fulfilled to the point of losing his life. It is very obvious that the negligence of Nurse Staig, by giving the medical instrument to the Petitioner whom has no knowledge of nursing or being a Podiatrist, the delay of treatment by medical staff, the implementation of the CPAP usage policy by H.S.A Cross, the refusal of removing the Television stand fixture and the direct support of the staff to implement as you go along policies, under the direction and approval of the corporate directors, facility administrators and their respective assistants in a effort to minimize spending, and increase profits, has all contributed to the loss of limb to the Petitioner, if the court could check through the 13 Circuits, there are a wide amount of lawsuits directly involving The Geo Group Inc. and its unregulated policies, deliberate indifferent treatment, and abuses of the inmates under their custody. In this case the court can also see the

perjurious stand taken by Mr. Moorehead the facility phycologist in an attempt to discredit the Petitioner future claims, even before talking with him that the Petitioner has told several officers right after the injury, and during his stay at the hospital of the reason why this had happened, this can be construed as a cover-up for his fellow staff negligence's. As the Petitioner will show with his exhibits, the court can also observe how medical issues are bounced around to discourage the inmate from seeking help, where even serious injuries are treated as frivolous, there is a thin line between minimal care and deliberated indifference, and these are the guidelines the medical staff in the Geo facilities continue to strive on, to the point that crossing that thin line is almost unseen, unless an injury or loss of limb is caused like in this case. It is very rare that since the Petitioner has returned to the facility, medical services has tried its best to comply with medical practices, to the point of putting the Petitioner on call out to be seen by medical on August 07,2021 at 10:00 am for nail trimming, the same nail that was removed with the toe, "See exhibits" and Nurse Stakenas informed the Petitioner that it must has been the computer glitch, that would had put him on the call out automatically, when any other time he has had to request it,is also obvious that the stimulus and incentives of prospective bonus at the end of the year, according to the amount that they save the Corporation, is a major role player indicator that profits comes before ethics and humanity, from every staff participant at these facilities at all levels, so is very easy to forget procedures according to medical guidelines.

9

## REMEDY

The Petitioner request that this Court grants him the following:

The termination of the CPAP sleep policy, that is limiting the sleep time to CPAP users, from 10:00pm to 06:00 am, when others inmates that do not have sleep disorders can sleep as long as they want, especially during this lockdown time.

The removal of the Television fixture from the bedding area to prevent future injuries.

The payment of $500,000.00 dollars to the Petitioner for the loss of limb, negligence, deliberated indifference, pain and suffering, and stress caused by trauma and intimidation.

Punitive damages to be paid to the Petitioner for the amount of $2,000,000,000.00, by The Geo Group Inc. and its officers so there is a lesson to be learned, that because they are given the care of inmates by the governmental agencies for correction business, does not give them the right to treat the inmates with minimal care, implant policies and threatening inmates that do not agree with their negligent policies, as they go alone to enrich their packets, that cause injuries and in some cases death among the inmate population. The Petitioner hopes that his request is granted, and let the big Corporations like this one where financial success overrides the basic human rights, and also let them know that there is some humanity left in those inmates that are in their care, and should be treated as such.

Respectfully Submitted

*/s/ Leonardo Lleras Rodriguez*

LEONARDO LLERAS RODRIGUEZ

2223 s 14TH ST

Saint Joseph, MO.64503

Dated *Aug 26-21*

## VENUE

Pursuant to Branden v.30th Judicial Circuit Court of Kentucky, 410 U.S.484,493-500 (1973) venue lies in the United States District Court for the District of Michigan, the judicial District where the Petitioner is currently detained.

## PRO-SE

Pro-se pleadings, "however in artfully pleaded, "must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v Kerner,404 U.S.519,520, 92 S.Ct. 594,30 L.Ed. 2d 652 (1972). If the Court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements' Boag v. MacDougall,454 U.S. 364,102 S.Ct. 700, 70 L. Ed. 2d 551 (1982); United States ex rel. Montgomery v. Brierley,414 F.2d 552,555 (3rd Cir.1969) (" petition prepared by a prisoner… may be in artfully drawn and should be read with a 'measure of tolerance'"); Freeman v. Department of Corrections, 949 F. 2d 360 (10th Cir.1991). Under our liberal pleading rule, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See,e,g,. Nami v. Fauver, 82 F. 3d 63, 65 (3d Cir 1996) (discussing Fed. R.Civ.P. 12(b)(6) standard); Markowitz v.

**12**

Northeast Land Company, 906 F.2d 100,103 (3d Cir. 1990) (same). Because Plaintiff is a pro se litigant, this Court must consider the facts and make inferences where it is appropriate.

## EXHAUSTION OF REMEDIES

The PRLA require Courts to review, prior to docketing, actions filed by prisoners against governmental entities or officials.28 U.S.C. 1915(a). The purpose of this review is to eliminate those claims that unnecessarily impede judicial efficiency and the administration of justice. The Court must examine the pleadings, identify cognizable claims, and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Id. At 1915A(b).

In this case the guidelines are left to the Court to decide since the injury came before the administrative remedies where available, and an intimidating factor. Accordingly, the Petitioner has exhausted all the remedies available to him to the extent of the law and the PRLA guidelines.

## 42 U.S.C. 1983

To succeed on claims under section 1983, a plaintiff must show a deprivation of a right secured by the Constitution and laws of the United States, and he must show that the deprivation was committed by a person acting under Color of Law." Bailey v.

**13**

Nat'l Bank & Trust, 188 F. App'x 66,67 (3d Cir. 2006) (per curiam) (citing West v. Atkins, 487 U.S. 42, 47, 108 S.Ct 2250, 101 L.Ed. 2d 40 (1988) The Court should consider claims against each named defendant in turn.

## EIGHT AMENDMENT DELIBERATE INDIFERENCE

To state a 1983 claim based on deliberate indifference, a Plaintiff must allege (1) that he had a serious medical need and (2) acts or omissions of prison officials showing deliberate indifference to that need. Natalie v. Camden Cty. Corr. Facility,318 F, 3d 575, 582, (3d Cir.2003). "Deliberate indifference" requires highly culpable conduct-although prison systems have a duty to provide prisoners with adequate medical care, simple medical malpractice does not create a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 104-106, 97 S.Ct.285, 50 L. Ed. 2d 251 (1976) however, the Plaintiff alleges a deliberate failure to provide adequate care, particularly a failure "motivated by non-medical factors," he alleges deliberate indifference. Id. Put differently, Respondents act with deliberate indifference when they disregard a known excessive risk to a plaintiff's health. Baez v. Stine, 260 F. App'x 494,497 (3d Cir.2008) (citing Farmer v. Brennan,511 U.S. 825,837,114 S.Ct.1970,128 L. Ed. 2d 811 (1994)).

**14**

**GEORGE ZOLEY**

**Founder**

1 Park Place

621 NW 53rd Street Suite 700

Boca Raton, Fl.33487

**TRACY JOHNS**

Facility Administrator

1805 W 32nd street

Baldwin, MI.49304

**JOSE GORDO C.E.O**

1 Park Place

621 NW 53rd Street Suite 700

Boca Raton, Fl.33487

**K. GRAY**

Assistant Facility Administrator

1805 W 32nd Street

Baldwin, MI.49304

**BRIAN R. EVANS C.O.O**

1 Park Place

621 NW 53rd Street Suite 700

Boca Raton, Fl.33487

**R. CROSS H.S.A**

1805 W 32nd Street

Baldwin, MI.49304

**Nurse STAIG**

1805 W 32nd street

Baldwin, MI.49304

14

## CERTIFICATE OF SERVICE

I, Leonardo Lleras Rodriguez certify under the penalty of perjury that the above documents are truthful to the best of my knowledge and placed on the USPS box at Northlake Correctional Facility on, _Aug, 26-2021_ .

Respectfully Submitted

LEONARDO LLERAS RODRIGUEZ

Leonardo Lleras Rodriguez
#38558-018
N.L.C.F
P.O Box 1500
Baldwin, MI. 49304

Gerald R.
Clerk
110 Mich
Grand R

Legal Mail.




Ford Federal Building
l Court
higan street. N.W
apids, MI. 49007