UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LEONARDO LLERAS-RODRIGUEZ,

          Plaintiff,                       Case No. 1:21-cv-787

v.                                         Honorable Ray Kent

GEO GROUP, INC. et al.,

          Defendants.

_____/

## OPINION

This is a civil rights action purportedly brought under 42 U.S.C. § 1983 and § 12131[1] by a person who, at the time the complaint was filed, was a federal prisoner. (ECF No. 1.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.) The Court denied Plaintiff leave to proceed *in forma pauperis* and directed Plaintiff to pay the filing fee. (ECF No. 6.) When Plaintiff did not timely pay the fee, the Court dismissed the action without prejudice. (ECF Nos. 8, 9.) In the interim, Plaintiff was released from federal custody. (ECF No. 7.)

Although the Court had no record of receiving the filing fee payment, Plaintiff insisted that he had timely paid. (ECF No. 10.) Further investigation revealed that Plaintiff was correct, but it also revealed that the payment had not been properly credited to his filing fee obligation in this

---

[1] Section 12131 of Title 42 is the "definitions" section of Title II of the Americans with Disabilities Act (ADA).

case because of a clerical error. (ECF No. 11.) The Court vacated the order and judgment dismissing the case. (*Id.*)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).[2] The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or

---

[2] 28 U.S.C. § 1915A authorizes preliminary review of a complaint if a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. As set forth in detail below, none of the Defendants are governmental entities or officers of employees of governmental entities. In fact, that is a fatal defect in Plaintiff's claims. If Plaintiff expressly stated that Defendants were governmental entities or officers or employees of such entities, review under § 1915A would still be warranted. But Plaintiff never makes that essential allegation—it is implicit, but not expressly stated. That creates a Catch-22 with regard to review of Plaintiff's claims under § 1915A. Plaintiff's claims necessarily fail because the Defendants are not governmental entities or officers or employees thereof and, therefore, are not "state actors" under § 1983 and are not "public entities" as contemplated by Title II of the ADA. But that conclusion suggests that the Court may not conduct a preliminary review under § 1915A. The undersigned concludes that Plaintiff's claim that Defendants are liable under § 1983 and Title II of the ADA implicitly includes the allegation that they are state actors and public entities such that review under § 1915A is appropriate. But even if preliminary review under § 1915A is not appropriate, preliminary review is still authorized under 42 U.S.C. § 1997e, which provides that the court shall dismiss, on its own motion, any action with respect to prison conditions under § 1983 or any other federal law by a prisoner confined in any jail, prison, or correctional facility.

other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA or under the rules regarding joinder, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[3]

---

[3] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c));

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim upon which relief may be granted. The Court will also decline to exercise supplemental jurisdiction over Plaintiff's state law claims. The Court will dismiss those claims without prejudice.

## Discussion

### I.   Factual Allegations

Plaintiff presently resides in St. Joseph, Missouri. At the time Plaintiff filed his complaint, however, he was incarcerated at the North Lake Correctional Facility, a private prison run by Defendant GEO Group, Inc. (GEO), under contract with the Federal Bureau of Prisons (BOP). (Compl., ECF No. 1, PageID.2.) Plaintiff arrived at North Lake on March 2, 2021. (*Id.*) He was released on November 3, 2021. *See* https://www.bop.gov/inmateloc/ (search inmate number "38558-018," visited June 25, 2022).

Plaintiff complains that North Lake implemented a policy that permitted inmates to use power for the CPAP machines only from 10:00 p.m. until 6:00 a.m. Plaintiff contends that the policy put him in an impossible situation because the medications he was prescribed caused him

---

*Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

to fall asleep and that if he took his medications as required, he would fall asleep before he could begin to use the CPAP machine. Moreover, when power to the CPAP machine was discontinued at 6:00 a.m. it would necessarily wake him, thus preventing him from sleeping beyond 6:00 a.m., as other inmates were permitted to do.

Plaintiff alleges that he complained to several North Lake employees. They told him that the time limitations were put in place by Defendant R. Cross, the North Lake Health Services Administrator. Plaintiff also complained to Defendant K. Gray, North Lake Assistant Facility Administrator. Gray also informed Plaintiff that the CPAP time limits were a medical decision. (Inmate Request to Staff, ECF No. 7-1, PageID.107.)

Plaintiff also complains that on June 17, 2021, he was called into medical to get his toenails trimmed. Plaintiff reports that his toenails were enlarged due to fungus. Defendant Nurse Staig, rather than trimming Plaintiff's toenails, gave Plaintiff the trimmers and instructed him to trim the toenails himself. Plaintiff nicked his toe, drawing blood. Plaintiff informed Nurse Staig, but she did nothing about it.

A week later, Plaintiff was startled awake by the abrupt cutoff of power to his CPAP at 6:00 a.m. Because he was startled, he hit his toe on a television table in the bedding area. Plaintiff reported the injured toe on June 28. Plaintiff was examined by medical staff the next day. The toe appeared to be infected. Plaintiff was treated with antibiotics, but the infection spread. Plaintiff's toe was examined and treated each day thereafter, until July 2, 2021. On that date, he was sent to the emergency room at a local hospital. He was treated with intravenous antibiotics. Nonetheless, on July 8, 2021, the injured toe was removed.

Plaintiff contends he lost the toe because of the CPAP rule—the abrupt shut off of power to his CPAP machine startled him and led to him kicking the television table.

Plaintiff does not sue any of the healthcare providers other than Nurse Staig. Instead, he sues Staig, presumably for making Plaintiff cut his own toenails, and sues Cross and Gray because of the CPAP policy. Plaintiff also sues Warden Tracy Johns because Johns threatened Plaintiff such that Plaintiff was discouraged from pursuing a grievance regarding the CPAP/toe issues.

Finally, Plaintiff sues GEO and several GEO officers—founder George Zoley, Chief Executive Officer Jose Gordo, and Chief Operations Officer Brian R. Evans. Plaintiff does not make specific allegations against these Defendants, other than to say that GEO needs to learn a lesson about taking care of inmates. Plaintiff states that GEO and its officers permit "financial success [to] override[] basic human rights . . . ." (Compl., ECF No. 1, PageID.11.)

Plaintiff seeks injunctive relief: termination of the CPAP policy and removal of the television table from the bedding area. Plaintiff also seeks damages in the amount of $500,000 for the loss of his toe and $2,000,000,000 in punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

6

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A.    § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). ). But Plaintiff acknowledges that Defendants are acting under contract with the BOP, a federal agency. *See Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003). Federal agencies and their officials "are not subject to suit under [§ 1983] . . . because actions taken by federal agencies are 'governed by and taken pursuant to [federal statute,]' . . . and 'federal officials typically act under color of *federal* law' . . . ." *Haines v. Federal Motor Carrier Safety Admin.*, 814 F.3d 417, 429 (6th Cir. 2016) (internal citations omitted, brackets and emphasis in original) (quoting first *Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 931 (6th Cir.1987) and then *Strickland on Behalf of Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir.1997)). Because Plaintiff alleges no facts to permit the inference that Defendants acted under color of state law, he has failed to state a claim for violation of 42 U.S.C. § 1983.

### B.    *Bivens*

Where a person alleges that a "federal" actor has violated his or her federal constitutional rights, the claim arises under the doctrine of *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971). Plaintiff does not invoke *Bivens* as the basis for his claims; but,

7

construing Plaintiff's allegations liberally, the Court will consider Plaintiff's allegations as attempting to state a *Bivens* claim.

In *Bivens*, 403 U.S. 388, the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). This implied cause of action is "the federal analog to suits brought against state officials" under 42 U.S.C. § 1983. *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006). To state a claim that is cognizable in a *Bivens* action "a plaintiff must initially demonstrate (1) a challenged action attributable to a person acting under color of federal law, and (2) conduct that deprives the party of a constitutionally protected interest." *Left Fork Mining Co. v. Hooker*, 775 F.3d 768, 774 (6th Cir. 2014) (citing *Schweiker v. Chilicky*, 487 U.S. 412, 418-21 (1988)). "If those elements are satisfied, the Court then proceeds to a two-step inquiry to ascertain whether a *Bivens* damages remedy should be inferred." *Left Fork*, 775 F.3d at 774 (citing *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

"A *Bivens* remedy is available only if (1) there are no 'alternative, existing process[es]' for protecting a constitutional interest and, (2) even in the absence of an alternative, there are no 'special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Left Fork*, 775 F.3d at 774 (quoting *Wilkie*, 551 U.S. at 550). "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker*, 487 U.S. at 423. Thus, "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69 (citation omitted).

Here, Plaintiff sues a private company and its officers and employees. *Bivens* does not permit an action against private entities acting under color of federal law, *Malesko*, 534 U.S. at 70–74, or against individual employees of private entities, *see Minneci v. Pollard*, 565 U.S. 118, 131 (2012). Thus, *Bivens* does not permit an action against GEO or any of the individual Defendants.

In *Malesko* and *Minneci*, the Supreme Court noted that state-law tort remedies offer "adequate alternative remedies" that provide "roughly similar incentives for potential defendants to comply with [the Constitution] while also providing roughly similar compensation to victims of violations." *See Minneci*, 565 U.S. at 127, 130. The same is true here. Plaintiff can seek relief for the harms done to him by bringing his tort claims in state court. Indeed, he purports to raise state law claims against the Defendants. Therefore, Plaintiff has failed to state a claim against Defendants under *Bivens*.

### C.      ADA, Title II

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

Plaintiff's claim fails because the Defendants are not subject to Title II of the ADA. Whatever "services, programs, or activities" he has been excluded from or denied, or whatever

discrimination he has suffered, they do not relate to a "public entity" as defined by the statute. Under Title II of the ADA, public entity means:

> (A) any State or local government;
>
> (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and
>
> (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of title 49).

42 U.S.C. § 12131(1). "Title II of the ADA does not apply to federal prisoners in federal prisons, . . . . That is so because Title II covers only states and defined appendages thereof." *Phillips v. Tiona*, 508 F. App'x 737, 752 (10th Cir. 2013). Moreover, "Title II of the ADA does not generally apply to private corporations that operate prisons." *Id*. at 754; *see also Matthews v. Penn. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) ("[A] private corporation is not a public entity merely because it contracts with a public entity to provide some service.") (quoting *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010)). Accordingly, Plaintiff has failed to state a claim against these Defendants for violation of Title II of the ADA.

## III.   State law claims

Plaintiff's allegations might also serve as the foundation for state-law tort claims. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental

jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the PLRA, the Court will dismiss Plaintiff's federal claims for failure to state a claim upon which relief can be granted. The Court also declines to exercise supplemental jurisdiction over any state-law tort claims. Those claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   July 26, 2022                          /s/ Ray Kent
                                           Ray Kent
                                           United States Magistrate Judge